**WASSERMAN, JURISTA & STOLZ, P.C.**
225 Millburn Avenue - Suite 207
P.O. Box 1029
Millburn, New Jersey  07041
Phone: (973) 467-2700
Attorneys for Debtor
**SCOTT S. REVER (SR-1425)**

_____

|  |  |
|---|---|
| In Re: | :UNITED STATES BANKRUPTCY COURT<br>:FOR THE DISTRICT OF NEW JERSEY<br>:CHAPTER 11<br>:<br>: |
| **BASIC LINE, INC.,** | : Case No.:  10-11474 KCF<br>: |
| Debtor. | : Honorable Kathryn C. Ferguson<br>: |
| _____ | : |

_____

**MOTION IN SUPPORT OF ENTRY OF AN ORDER AUTHORIZING THE DEBTORS'S INTERIM USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND F.R.B.P. 4001, AND SCHEDULING A FINAL HEARING**
_____

TO:   HONORABLE KATHRYN C. FERGUSON
      UNITED STATES BANKRUPTCY JUDGE

Basic Line, Inc., the Debtor ("Debtor") in the above captioned matter, through its counsel, Wasserman, Jurista & Stolz, P.C. respectfully represents the following:

### I.     INTRODUCTION AND JURISDICTION

1.     This Motion is submitted in support of the entry of an Order authorizing the Debtor's interim use of cash collateral pursuant to Section 363 of the Bankruptcy Code and F.R.B.P. 4001, and scheduling a final hearing.

2.     The Debtor needs to use its cash collateral to continue to operate and fund its business operations.

3.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§1334 and 157(b).  This is a "core" proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (M) and (O).

4. Venue is proper in this Court pursuant to 28 U.S.C. §1409(a).

## II. BACKGROUND

5. The Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on January 20, 2010 (the "Petition Date").

6. Basic Line, Inc. (hereinafter "BLI") was founded in 1976 by Yaffa and Vito Licari, BLI's sole shareholders.

7. BLI manufacturers a wide range of polypropylene plastic housewares from a 13 acre 110,000 square foot state of the art manufacturing facility in Perth Amboy, New Jersey.

8. BLI's products are marketed under the trademarked name "Yaffa", a name widely known to retailers and the public. Yaffa Licari invented the ubiquitous "Tubular Hanger" and BLI's signature product "Yaffa Blocks".

9. BLI conceptualizes its products, builds its own molds and handles all aspects of the Production, distribution and delivery. All products are manufactured entirely in the U.S.A. At any given time, BLI employs up to 100 employees.

10. BLI experienced significant growth and profit for many years. In 1994, when BLI moved to its Perth Amboy facility, the company purchased a full line of production equipment, including twenty-two (22) injection molding machines. BLI's manufacturing process, is headed by its highly esteemed engineer Vito Licari and is manned by a very efficient and experienced production staff.

11. During the 1990's, BLI experienced nine (9) consecutive years of profitability. BLI's business was centered primarily on large retailers. Among the major retailer customers was Kmart. In order to meet Kmart's needs, BLI opened up a second manufacturing facility in Dallas, Texas. By the beginning of this decade, BLI's sales volume had exceeded $20 million per year.

12. Unfortunately, the last five years have seen a confluence of unanticipated financial setbacks, which have had a dramatic cumulative effect on BLI's business volume, cash flow and profitability.

13. Kmart's Bankruptcy had a particularly catastrophic impact. All of the expense of opening the Dallas facility was wasted and almost overnight BLI lost substantial sales volume.

14. Recently other significant customers of BLI have gone through bankruptcy, including Linens and Things, whose demise reduced BLI's annual sales by almost $4 million.

15. Despite these unanticipated financial setbacks, BLI has attempted to avoid its own Chapter 11 Bankruptcy. BLI entered into payment plans with some of its vendors and had attempted to significantly reduce its accumulated trade liabilities.

16. Over the past year, BLI has taken pivotal steps in adapting itself to the current economic climate. BLI's product line has recently been dramatically enhanced to better take into account today's consumer needs, trends and desires. BLI has recently upgraded its sale staff with the most esteemed sales team in the housewares industry. This team has in a short time added Dollar General, Winn Dixie, Bed Bath & Beyond, Ocean State Jobbers, White Rose and a prominent Canadian dist. Cap Sales as customers and more are in progress.

17. Unfortunately, BLI's ability to service its customers and produce product was being impaired by the accumulated liabilities incurred during the prior years.

18. In order to use it's cash availability to manufacture product for the increasing sales, BLI determined that a Chapter 11 filing was necessary. BLI believes that its cash flow must be utilized to purchase raw material so that the company can return to significant profitability, even during the demanding phase of a Chapter 11 Reorganization.

**A.    The Debtor's Pre-Petition Relationship With Northfield Savings Bank, Banco Popular N.A. and Sheina Associates**

    I.    NORTHFIELD SAVINGS BANK

    19.    Prior to the Petition Date, Northfield Savings Bank loaned the sum of $5,500,000.00 to Sheina Associates as memorialized in a certain Term Loan Note. Sheina Associates is the landlord of the Debtor's business premises located at 920 State Street, Perth Amboy, New Jersey (the "Property"). The principals and shareholders of the Debtor, Yaffa and Vito Licari, are the partners of Sheina Associates.

    20.    The Debtor guaranteed Sheina's obligations to Northfield under the Note.

    21.    The amount due to Northfield is secured by a mortgage on the Property and a lien on substantially all of the Debtor's assets.

    22.    The balance due to Northfield under the Note is approximately five million dollars.

    23.    Accordingly, Northfield as of the Petition Date, has a valid and subsisting lien and security interest in substantially all of the Debtor's assets, including the Debtor's accounts, inventory and other collateral which is or may result in cash collateral.

    II.    BANCO POPULAR NORTH AMERICA

    24.    Prior to the Petition Date, Banco Popular North America ("Banco Popular") provided the Debtor with a line of credit in the sum of $100,000.00, pursuant to an agreement dated May 14, 2008.

    25.    The amount due on the Line of Credit is secured by substantially all of the Debtor's assets.

    26.    The current amount due to Banco Popular under the loan documents is $100,000.00.

27. Banco Popular as of the Petition Date has a valid and subsisting lien and security interest on substantially all of the Debtor's assets, including the Debtor's accounts, inventory and other collateral which is or may result in cash collateral.

### III. SHEINA ASSOCIATES

28. Sheina Associates made three secured loans to the Debtor totaling $450,000.00. The loans are secured by a lien on the Debtor's accounts receivable.

29. As of the Petition Date, Sheina Associates was owed $450,000.00 plus interest on the foregoing loans.

30. Sheina Associates as of the Petition Date has a valid and subsisting lien and security interest on the Debtor's accounts receivable.

**Need for Use of Cash Collateral**

31. The Debtor does not have sufficient unencumbered cash or other assets with which to continue to operate its business in Chapter 11. The Debtor requires immediate authority to use cash collateral as defined herein in order to continue its business operations without interruption toward the objective of formulating an effective plan of reorganization. Debtor's use of cash collateral to the extent and on the terms and conditions set forth herein is necessary to avoid immediate and irreparable harm to the estate pending a final hearing. The amount of cash collateral authorized to be used pending a final hearing or entry of a final order is not to exceed the amounts reflected in the Debtor's budget, annexed hereto as Exhibit "A", for the time period from January 20, 2010 (the Petition Date) through April 20, 2010 (the "Cash Collateral Budget").

**B.     The Pre-Petition secured lenders are adequately protected**

32. Northfield Savings Bank is adequately protected because it has a mortgage on the Property. Sheina Associates obtained an appraisal of the Property two years ago and the value of

the Property was well in excess of the amount due to Northfield. Despite the downturn in the economy and real estate values, the Debtor believes the value of the Property is still well in excess of the amount owed to Northfield. Northfield is further protected by the value of the Debtor's assets.

33. Banco Popular and Sheina Associates are adequately protected because on the Petition Date, the Debtor had inventory worth $1,692,331.00, equipment worth $2,423,272.00 and accounts receivable worth $651,852.00 and combined Banco Popular and Sheina Associates are owed approximately $550,000.00 plus interest. In addition, Sheina Associates consents to the Debtor's use of cash collateral.

34. The Debtor has also had discussions with counsel for Northfield and Banco Popular and the Debtor is hopeful that the secured lenders will consent to the Debtor's use of cash collateral.

### III.    RELIEF REQUESTED AND BASIS THEREFOR

35. The Debtor requests authorization to use cash collateral to meet the ordinary cash needs to the Debtor (and for such other purposes as may be approved in writing by the Secured Creditors for the payment of actual expenses of the Debtor necessary to (a) maintain and preserve its assets, and (b) continue operation of its business, including payroll and payroll taxes, and insurance expenses as reflected in the cash collateral budget.

36. The Debtor respectfully requests Court authorization, for the periods and in accordance with the cash collateral budget, to use cash collateral for the following purposes: (a) maintenance and preservation of its assets; (b) the continued operation of its business, including but not limited to payroll, payroll taxes, employee expenses, and insurance costs; (c) the completion of work-in-progress; and (d) the purchase of replacement inventory.

37. The Debtor requires the use of it accounts receivable and the proceeds from the sale

of its inventory, as collected, to fund its day-to-day operations.

38. The Debtor has agreed to provide its pre-petition secured lenders with a replacement lien on the Debtor's assets, including inventory and accounts, in the same priority that each had pre-petition.

39. If the Debtor is not permitted to use the proceeds from the sale of its inventory and accounts receivable, the Debtor will be unable to continue its operations resulting in immediate and irreparable harm to the Debtor's bankruptcy estate and the creditors thereof.

40. Pursuant to Section 363(c)(2) of the Bankruptcy Code, a Debtor is prohibited from using cash collateral unless each entity that has an interest in such cash collateral consents or the Court, after notice and hearing, authorizes such use.

41. Since the Debtor's pre-petition secured lenders are adequately protected as required under Sections 361(2) and 363(e) of the Bankruptcy Code, the Debtor's use of cash collateral is appropriate and should be approved by this Court.

42. In accordance with Section 363(c)(3), the Debtor hereby requests that this Court conduct an interim hearing authorizing the Debtor's use of cash collateral, and schedule a final hearing at which time any objections, if any, to the Debtor's continued use of cash collateral can be heard.

## V.    NOTICE

43. The Debtor seeks the requested interim relief and proposes to serve the Debtor's twenty (20) largest creditors; the Office of the United States Trustee, the New Jersey and Federal Tax Authorities and counsel to the Debtor's pre-petition secured creditors and all parties who have filed a Notice of Appearance. The Debtor respectfully submits that such service will constitute good and sufficient service.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an Order authorizing the Debtor's interim use of cash collateral pursuant to Sections 363 of the Bankruptcy Code and F.R.B.P. 4001, and scheduling a final hearing, and to grant such other and further relief as this Court may deem just and proper.

    Respectfully submitted,

    **WASSERMAN, JURISTA & STOLZ, P.C.**
    Attorneys for Debtor

Date:  January 26, 2010    /s/    SCOTT S. REVER_____
    SCOTT S. REVER